MADELEINE M. LANDRIEU, Judge.

STATEMENT OF THE CASE

Defendant John Duncan, a juvenile, was charged by grand jury indictment on July 15, 2004, with second degree murder, a violation of La. R.S. 14:3o.[1] He pleaded not guilty and filed several pre-trial motions. The trial court denied Mr. Duncan’s motions to suppress the evidence, statement, and identification, and granted his motion to sever. Mr. Duncan was tried in his first trial before a twelve-person jury on March 21-23, 2005, and found guilty as charged. He then filed a motion for a new trial, which the trial court denied. On March 31, 2005, the trial court sentenced Mr. Duncan to sixteen years, two months, and one day at hard labor — until his thirty-first birthday.[2] The trial court denied Mr. Duncan’s motion to reconsider the sentence and granted his motion for appeal. On May 16, 2005, |¡>Mr. Duncan filed a motion for new trial based upon newly discovered evidence.[3] After conducting two hearings, the trial court granted the motion on August 19, 2005.[4]
On February 17, 2006, the trial court granted the State’s motion for an out-of-time appeal of the trial court’s judgment granting the defendant’s motion for new trial. On May 9, 2006, this court denied as moot (due to the trial’s court’s granting of defendant’s motion for new trial) defendant’s motion filed in this court to: (1) reverse his conviction and sentence, and grant him a new trial due to the failure of the court reporter to produce his trial transcript and to have the record lodged *508 for his appeal; or (2) alternatively, grant a writ of mandamus directing the district court to ensure the lodging of the record in his appeal.[5]
On November 2, 2006, Mr. Duncan filed a motion to quash the indictment due to the State’s failure to timely commence trial, which was denied by the trial court on February 2, 2007. Mr. Duncan then sought supervisory review in this court. The writ application, State v. Duncan, 2007-K-0317, was consolidated with the State’s out-of-time appeal of the trial court’s granting of defendant’s motion for new trial. In State v. Duncan, 2006-1029 (La.App. 4 Cir. 5/9/07), 957 So.2d 858, this court held that the State’s appeal was untimely and thus dismissed it. In disposing of the consolidated writ application in that consolidated action, this court held that at the time the trial court granted defendant’s motion for new trial on August 19, 2005, it had been divested of jurisdiction by its April 13, 2005 granting of defendant’s motion for appeal. This court remanded the case for “further | ^proceedings, including a hearing on the motion for new trial.” 2006-1029, p. 4, 957 So.2d at 861. This court denied defendant’s timely-filed application for rehearing, and the Louisiana Supreme Court denied defendant’s application for writs.[6]
On April 1, 2008, the trial court ordered the defendant to file a written motion to withdraw his still pending 2005-filed appeal from this court, which defendant did. On July 29, 2008, the trial court granted defendant’s new motion for a new trial. The State sought supervisory review in this court of the trial court’s granting of defendant’s second motion for new trial. This court denied that motion on October 16, 2008, and the Louisiana Supreme Court denied the State’s application for writs on October 24, 2008.[7]
In proceedings before the trial court on December 11, 2008, the defendant filed a notice of intent/motion to use the prior statement of an unavailable witness. The trial court conditionally granted that motion on December 12, 2008. The State sought supervisory review and, on March 26, 2009, this court denied that writ.[8] Mr. Duncan appeared for trial on March 15, 2010, at which time the trial court denied his motion to quash based on untimely commencement of trial. He sought supervisory review in this court, which was denied.[9] On March 16, 2010, this court denied another writ filed by the defendant as repetitive of the writ denied the previous day.[10]
14 Mr. Duncan was tried before a twelve-person jury on March 16-22, 2010, and was found guilty as charged. On April 9, 2010, the trial court denied the defendant’s motions in arrest of judgment, for post-verdict judgment of acquittal, and for new trial. On that same date the trial court sentenced Mr. Duncan to hard labor until his thirty-first birthday, without benefit of probation, parole, or suspension of sentence. He now appeals his conviction.

*509
FACTS

John “J-Rock” Duncan was convicted for the May 1, 2004 second degree murder of Daniel Breaux. Witnesses at trial included five police officers: Sergeant Frederick Conerly, Officer Nicole Powell, Sergeant Jimmie Turner, Sergeant Luther Lumpkin, and Detective Christopher Martin.
Sgt. Conerly testified that he and his partner, Off. Ruffins, were assigned to Jazz Fest coverage on May 1, 2004. Sgt. Conerly testified that during Jazz Fest he normally patrolled the perimeter, monitoring the area for safety, and that day he was patrolling off Esplanade Avenue, covering Bell Street and Ursulines Avenue. Just before 8:00 p.m. on that rainy evening, while riding on Bell Street toward the bayou, with Off. Ruffins driving, Sgt. Conerly observed a bearded white male walking on N. Dupre Street away from Esplanade Avenue with four black males behind him. The police unit stopped, and these individuals all crossed Bell Street in front of them. The officers then decided to “make the block.” After they returned to N. Dupre, they observed the victim walk under a street light, and also saw the four black males behind him. The officers passed them on N. Dupre Street and stopped their vehicle. Sgt. Conerly testified that he was exiting the vehicle and that he and Off. Ruffins were both looking behind them to see what was going on |5when he heard a gunshot. They went on foot to the corner of N. Dupre and Orchid Streets, where Sgt. Conerly observed the victim lying on the sidewalk face down, bleeding from the back of his head and heaving heavily. Sgt. Conerly rendered aid to the victim and put out a dispatch for four black males, three attired in dark clothing — black T-shirts and black pants— and one wearing a light-colored T-shirt and black pants. Off. Ruffins ran down Orchid Street, but was unable to apprehend anyone. Sgt. Lumpkin and another officer arrived on the scene first, and the ambulance arrived soon afterward. After the victim was taken from the scene, the officers canvassed the assailants’ flight path and the surrounding area for weapons, but none were found. Sgt. Conerly identified photographs of the scene on the night of the homicide, as well as items of evidence collected at the scene. Sgt. Con-erly further testified that after the shooting he believed all four of the black males had run down Orchid Street toward N. Broad Street.
Off. Nicole Powell testified that she was patrolling the area around the Jazz Fest that day and responded to the shooting call. While driving on N. Broad Street, she observed two black males at Ursulines Avenue fitting the descriptions given. One was wearing a white T-shirt and blue jeans while the other was wearing all black. Off. Powell’s partner, Det. Jimmie Turner, exited the patrol unit and apprehended the subject wearing the white shirt and blue jeans. She observed the second subject go into a residence on Ursulines Avenue. Once the first subject was secured, Off. Powell went to the residence and apprehended the second subject, Joseph Zardies.[11] Off. Powell then went to the hospital, where.she collected the victim’s clothing and some of his property, which she identified at trial. Off. | f,Powell also testified with regard to three search warrants she had executed in connection *510 with this case and the items recovered therefrom.
Sgt. Jimmie Turner, who was patrolling with Off. Powell on the day in question, said that he saw a black male with a white T-shirt and possible blue jeans come out of his peripheral vision at the corner of Ursu-lines Avenue. While pursuing this individual, who ran across the street, Sgt. Turner exited the vehicle, at which point another individual came into view. Sgt. Turner stopped one of the individuals, Kelvin Atkins. A frisk revealed no weapons on Atkins’ person.
Sgt. Luther Lumpkin was also assigned to patrol the perimeter of the Jazz Fest on May 1, 2004. He testified that just before 8:00 p.m., he was sitting outside C.C.’s Coffee Shop on Esplanade Ave. with two other police officers. It was raining. Four males walking from N. White Street passed in front of them, ducking their heads under the coffee shop table umbrellas as they passed by. Each one of them smiled at Sgt. Lumpkin as they passed by his table. The officer watched the four take a left on N. Dupre Street and disappear around the corner. Sgt. Lumpkin further testified that within a minute he heard on the police radio that Off. Ruffins and Sgt. Conerly were chasing someone apparently following a shooting. Responding, Sgt. Lumpkin went to the location where Kelvin Atkins was being held in a police car and identified him as one of the four individuals he had seen pass by the coffee shop on Esplanade Avenue immediately before the shooting. Sgt. Lumpkin further testified that he subsequently saw Cedric Curtis, another of the suspects, at the First District police station. Sgt. Lumpkin said he eventually saw photographs of all the subjects involved and that he recognized all four as the ones he had observed walk by when he was at the coffee house on Esplanade Avenue.
17Pet. Christopher Martin, the lead homicide detective on the case, testified that he was sitting with Sgt. Lumpkin and other officers at the C.C.’s Coffee shop that day. He corroborated Sgt. Lumpkin’s testimony that four black youths had walked by in the rain shortly before the radio dispatch concerning the shooting. He said one of the officers he was with had recognized the youths from a previous case he had worked on.
Det. Martin testified in detail about his interviewing of Kelvin Atkins and identified a transcript and audio recording of the statement he took from Atkins. The audio recording was played for the jury. Det. Martin testified extensively concerning various photo lineups he set up on the basis of Atkins’ statement, in which Atkins had identified the three individual who were with him at the time of the murder. Det. Martin testified regarding the events that led to the arrests of all three, namely John “J-Rock” Duncan, Gerone “Bitty” Wells, and Cedric Curtis, within three or four days after the murder. He further testified that two or three weeks into the case, one of his detectives, Det. Trippodo, told him he had spoken with a potential child witness and with the child’s mother, but Trippodo did not believe the boy, who was eight years old at the time of the murder, had seen or heard anything. Det. Martin testified that because of Trippodo’s opinion, the existence of the boy was not included in his report. The prior sworn testimony of Diana Egan, the mother of the boy, was then read to the jury. She stated that her son, who was outside a home on N. Dupre St., had come running inside crying just after she had heard a shot fired. Her son said he had seen some youths, one of whom was carrying a gun, but did not know what the youth with the gun looked like; he only remembered that *511 the youths were wearing long white T-shirts and black pants.
| sOther witnesses at trial included the pathologist who performed the autopsy on the victim, a firearms examiner, and a 911 operator who identified the audiotape of a 911 call reporting the incident. In addition, Kelvin Atkins, Gerone Wells, and Cedric Curtis testified as hostile witnesses. All three denied knowing anything about the shooting. They were each confronted with prior inconsistent statements they had given to the police indicating that the defendant, John Duncan, had shot Daniel Breaux.

ERRORS PATENT

A review of the record reveals one error patent. The trial court failed to wait twenty-fours before sentencing the defendant after denying his motions for new trial and for arrest of judgment, as required by La.C.Cr.P. art. 873.[12] Defense counsel did not expressly or implicitly waive the delay. However, the failure to observe the twenty-four-hour delay mandated by Article 873 is harmless where the defendant does not complain of his sentence on appeal. State v. Green, 2010-1355, p. 12 (La.App. 4 Cir. 6/22/11), 69 So.3d 695, 703, writ denied, 2011-1672 (La.1/20/12), 78 So.2d 140. Defendant does not complain of his sentence in the instant case. In addition, the failure of the trial court to observe the required twenty-four hour delay is harmless where the sentence imposed was mandatory. State v. Seals, 95-0305, p. 17 (La.11/25/96), 684 So.2d 368, 380; Green, supra. Defendant’s sentence of imprisonment until his thirty-first birthday under La. R.S. 14:30.1 and |flLa. Ch.C. art. 857(B)[13] was mandatory. Therefore, the trial court’s failure to observe a twenty-four hour delay between the denial of defendant’s motions for new trial and for arrest of judgment, as is required by La.C.Cr.P. art. 873, was harmless error.

ASSIGNMENT OF ERROR NO. 1

In this assignment of error defendant argues that the evidence was insufficient to support the verdict because the State impermissibly used impeachment evidence as substantive evidence of guilt. For the following reasons, we find no merit in this assignment of error.
This court set forth the applicable standard of review for sufficiency of the evidence in State v. Huckaby, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the *512 record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the Imweight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Huckaby, 2000-1082, p. 32, 809 So.2d at 1111, quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99,106-107.
When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Neal, 2000-0674, p. 11 (La.6/29/01), 796 So.2d 649, 658; State v. Weary, 2003-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311.
It is well-settled that the entirety of the evidence, whether properly or improperly admitted, is to be considered by the reviewing court when assessing a conviction for sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Brown, 2008-1434, p. 8 (La.App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242. If a defendant claims on appeal that certain evidence was improperly admitted, and the reviewing court finds that any rational trier of fact, viewing all the evidence in a light most favorable to the prosecution, could have found all the essential elements of the offense present beyond a reasonable doubt, the reviewing court then reviews other assignments of trial errors to determine whether the | ^ defendant is entitled to a new trial or an acquittal. Hearold, 603 So.2d at 734; Brown, 2008-1434, p. 8-9, 7 So.3d at 1242.
If the reviewing court determines there has been a trial error (which was not harmless) in a case in which the entirety of the evidence was sufficient to support the conviction, then the defendant must receive a new trial — but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. On the other hand, if the review of the entirety of the evidence reveals that the evidence is insufficient, the defendant is entitled to an acquittal. Hearold, 603 So.2d at 734; Brown, 2008-1434, p. 8, 7 So.3d at 1242-1243.
The defendant in the instant case was convicted of second degree murder. The pertinent elements are: the killing of a human being (a) with the specific intent to kill or to inflict great bodily harm; or (b) when the offender is engaged in the perpe *513 tration or attempted perpetration of armed robbery.
The victim, Daniel Breaux, was shot once in the back of the head at Orchid and N. Dupre Streets, on May 1, 2004, at approximately 8:00 p.m. Clearly, whoever shot him in the back of the head had the specific intent to kill or to inflict great bodily harm. On appeal, Mr. Duncan’s primary argument is that the only evidence showing that he was the individual who shot the victim was the prior statements of Kelvin Atkins, Gerone Walls, and Cedric Curtis — which would include Atkins’ and Curtis’ recorded statements; Det. Martin’s testimony as to what Walls said prior to his father invoking Walls’ right to remain silent at the beginning of the recording of a statement by Walls; and Atkins’ and Curtis’s identifications of defendant in respective photo identification procedures conducted by Det. Martin.
| ^Defendant does not actually dispute that, viewing the “entirety of the evidence” in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense of second degree murder present beyond a reasonable doubt. His argument is that the prior inconsistent statements by Atkins, Curtis, and Walls, identifying defendant as the person who attempted to rob and then shot the victim in the back of the head, were introduced by the State solely for the purpose of impeaching/attacking the credibility of those witnesses; and that under the facts of the case, evidence of those witnesses’ prior inconsistent statements was only admissible as evidence to impeach/attack the credibility of those witnesses; that “[i]f the statements are considered as used, as impeachment of the testimony by Atkins, Curtis and Walls, it had the impact of causing their testimony to be suspect in its entirety;” and that the remaining testimony (given the lack of physical evidence) does not contain any evidence of defendant’s guilt, only his possible presence at the scene of the shooting, which is insufficient to sustain his conviction for second degree murder.
Defendant does not argue on appeal that the trial court erred by admitting evidence concerning the prior statements by Atkins, Curtis or Walls, the Memorandum of Understanding between Atkins and the District Attorney’s Office, or the photo identifications of defendant made by Atkins and Curtis. Defendant’s trial counsel did not object to the introduction of any of the following: the audiotape recordings or transcripts of the May 2, 2004 statement by Kelvin Atkins; the audiotape recordings or transcripts of the May 3, 2004 statement by Cedric Curtis; Atkins’ Memorandum of Understanding; any questioning by the prosecutor of Atkins or Curtis concerning their respective statements; any questioning of Atkins concerning the Memorandum of Understanding; the photo identifications | ,sthe State alleged were made by Atkins and Curtis; or the questioning of Atkins or Curtis concerning those respective photo identifications.
Defense counsel did object to the admissibility of the brief, audiotaped statement made by Gerone Walls before his father had asserted Walls’ right to remain silent, and to the admissibility of the videotape of Kelvin Atkins. These objections were based on a lack of proper foundation and authentication. The trial court overruled the State’s objections. On appeal, the defendant does not raise the issue of the failure of the State to lay a proper foundation for and/or to properly authenticate any evidence.
Defense counsel also objected, on hearsay grounds, when the State began to question Det. Chris Martin about what Gerone Walls had told him about the events surrounding the murder. The *514 prosecutor responded to the hearsay objection by noting that Walls had denied making any statement to Det. Martin, and that “I’m impeaching Gerone Walls right now with the statement he gave to Detective Martin.” Defendant alleges that this particular objection and the State’s response thereto are proof that the State introduced all the evidence of prior inconsistent statements by Atkins, Curtis, and Walls for impeachment purposes only, pursuant to La. C.E. art. 607(D). The defendant alleges that this limited use of such evidence by the State was confirmed when defendant’s trial counsel made an “asked and answered” objection to a question put to Walls, and the prosecutor replied: “Judge, I’m laying the foundation for an impeachment.”
However, the State’s response to the hearsay objection was correct. Even the defendant concedes that hearsay is admissible to impeach/attack the credibility of a witness, pursuant to La. C.E. art. 607(D) (see text of article infra.). However, much of the same evidence admissible to impeach Atkins, Curtis, and Walls was | 14also independently admissible as substantive evidence, for the truth of the matter asserted, because, as will be discussed, the statements are not considered hearsay under La. C.E. art. 801(D)(1)(a) and/or (c) (see text of articles infra.). Similarly, the State’s response to defense counsel’s “asked and answered” objection was correct, in that he was laying a foundation to impeach Walls with his prior inconsistent statement as hearsay. Nevertheless, the same evidence was also admissible as substantive evidence under La. C.E. art. 801(D)(1)(a) and/or (c).
In closing argument the State very clearly argued the facts stated by Atkins, Curtis, and Walls in their prior inconsistent statements as substantive evidence to prove the truth of the matter asserted. Indeed, there was no direct evidence independent of the prior inconsistent statements of Atkins, Curtis, and Walls that John Duncan was the individual who had attempted to rob the victim and then had shot him in the back of the head. However, at no point during closing arguments did defense counsel object that the State was arguing the substance of the prior inconsistent statements for purposes other than impeachment and/or for the truth of the matter asserted. The failure to object at any point during the trial to the use of the prior inconsistent statements as substantive evidence/for the truth of the matter asserted, strictly speaking, precludes the defense from raising on appeal any trial court error as to that issue. See La.C.Cr.P. art. 841 (“An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”).
In the prior inconsistent statements by Atkins, Curtis, and Walls (which are to be considered in reviewing the evidence for sufficiency regardless of whether or not they were admissible as substantive evidence/for the truth of the matter asserted), each identified “J-Rock” as the individual who attempted to rob Daniel | lsBreaux and then shot him in the back of the head. Despite Atkins having described J-Rock as “bright-skinned” in his first recorded statement to Det. Martin, Atkins subsequently positively identified the defendant’s photo as J-Rock in the lineup conducted by Det. Martin. Atkins also named John Duncan as the shooter in the videotaped statement he gave to District Attorney Investigator Dwight Deal. Moreover, Atkins testified at trial that he witnessed a murder, that he ran with the people he was with — obviously meaning from the murder scene — and he replied in the affirmative when asked immediately thereafter whether he had been with John Duncan, *515 Gerone Walls and Cedric Curtis that day. Further, at trial, when asked by the prosecutor if the man “sitting right here is J-Rock,” obviously meaning the defendant, Atkins replied that he knew him as J-Rock. Similarly, despite Cedric Curtis having described J-Rock in his recorded statement to Det. Martin as “light-skinned,” Curtis subsequently identified as J-Rock defendant’s photo in the lineup conducted by Det. Martin.
The eight-year-old Egan boy, who was with his mother at a residence near the murder scene and allegedly witnessed the murder, stated in a deposition, later read into evidence at trial, that the shooter was wearing a white T-shirt. The boy confirmed in his deposition that he had seen some guys in white T-shirts. However, he subsequently confirmed in the same deposition that he had seen only one youth wearing a white-T-shirt, and that he had seen this youth shoot the man. He had been told there were four youths, but he stated that he had seen only one. Other evidence established that of the four youths, only Kelvin Atkins apparently was wearing a white T-shirt that evening. However, the Egan boy also testified that he had heard two shots, which had caused him to look toward the scene, whereupon he saw the victim being shot. However, the overwhelming evidence |1fiwas that there was only one shot fired. In addition, the boy’s mother testified that he had been hysterical when he had run inside after she had heard what had sounded to her like an automobile tire blowing out.
Clearly, viewing the entirety of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was the shooter, and that all the essential elements of the offense of second degree murder — either that the defendant shot and killed Daniel Breaux while having the specific intent to kill or to inflict great bodily harm, or that the defendant shot and killed Mr. Breaux while engaged in the perpetration or attempted perpetration of an armed robbery — had been established.
Under Hearold, supra, if a reviewing court finds the entirety of the evidence sufficient to sustain the conviction, the court should then review the assignments of trial error to determine whether there are any non-harmless errors warranting a new trial. In the instant case, however, defendant has not asserted any definitive assignments of trial error. Although defendant complains that the State offered evidence of the prior inconsistent statements by Atkins, Curtis, and Walls solely for impeachment purposes, as has been noted, and as will be discussed in detail infra, the crucial parts of those statements in which defendant was identified as the shooter were clearly admissible pursuant to La. C.E. art. 801(D)(1)(c) as non-hearsay substantive evidence/for the truth of the matter asserted. Defendant failed to lodge any objection to the introduction or use of that non-hearsay evidence for those purposes, and thus did not preserve that issue for appellate review. Therefore, the defendant cannot now raise as error the introduction or use of that non-hearsay evidence for those purposes.
| ^Nevertheless, we will address the admissibility of such evidence as substance evidence/for the truth of the matter asserted. Louisiana Code of Evidence provides as follows:
Article 607: Attacking and supporting credibility generally:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
*516 (1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of- undue consumption of time, confusion of the issues, or unfair prejudice.
Evidence of the prior statements to Det. Martin by Atkins, Curtis, and Walls, and by Atkins to District Attorney Investigator Dwight Deal, as well as of Atkins’ Memorandum of Understanding, was admissible under La. C.E. art. 607(D) to impeach/attack the credibility of those respective witnesses, each of whom denied at trial having previously stated to Det. Martin that J-Rock/John Duncan had attempted to rob the victim and then had shot him in the back of the head. In addition, evidence of the photo identifications of the defendant made by Atkins and Curtis was also admissible under Art. 607(D) to attack the credibility of those witnesses, both of whom denied at trial having previously identified the defendant’s photo in respective photo lineups presented separately to them by Det. Martin.
However, in addition to being admissible as impeachment evidence pursuant to La. C.E. art. 607(D), evidence adduced through the testimony of Det. Martin as listo the prior statements by Atkins, Curtis, and Walls is not hearsay under La. C.E. art. 801(D)(1)(c) and was admissible as substantive evidence.
La. C.E. art. 801(D)(1)(c) states:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
[[Image here]]
(c) One of identification of a person made after perceiving the person; or
[[Image here]]
A statement of identification by a witness of a person after perceiving him— as contemplated by La. C.E. art. 801(D)(1)(c) — may be used assertively, as substantive evidence of guilt, and may be established through the testimony of the person to whom the statement was made, even if the witness denies making an identification or fails to make an in-court identification. State v. Stokes, 2001-2564, p. 1 (La.9/20/02), 829 So.2d 1009, 1010, citing State v. Johnson, 99-3462, pp. 2-3 (La.11/3/00), 774 So.2d 79, 80-81. See also State v. Collins, 2001-1459 (La.App. 4 Cir. 8/21/02), 826 So.2d 598, citing and following Johnson.
In Johnson, the Louisiana Supreme Court directly addressed the impact of La. C.E. art. 801(D)(1)(c) on the general rule that a witness’s prior inconsistent statement is not admissible as substantive evidence, stating that “[a]n exception to this general rule exists for cases in which the witness’s prior inconsistent statement also constitutes a prior statement of identification for purposes of La. C.E. art. 801(D)(1)(c), Louisiana’s counterpart of Fed. R.Evid. 801(d)(1)(c).” (Emphasis added). Johnson, 99-3462, p. 2, 774 So.2d at 80.
| ^The testimony by Det. Martin concerning the identifications by Atkins and Curtis of defendant, John “J-Rock” Duncan, as the person who attempted to rob the victim and then shot him in the back of *517 the head — both in their respective statements as well as their assertions in selecting the defendant in the respective photo lineups — was not hearsay under La. C.E. art. 801(D)(1)(c) and was clearly admissible as substantive evidence. Det. Martin’s testimony as to Gerone Walls’ unrecorded identification of “J-Rock” as the person who attempted to rob the victim and then shot him in the head also was not hearsay and was admissible as substantive evidence under La. C.E. art. 801(D)(1)(c).
Defendant’s appellant brief ignores La. C.E. art. 801(D)(1)(c) and suggests only that the prior statements of Atkins, Curtis, and Walls were not admissible under La. C.E. art. 801(D)(1)(a), providing that certain prior inconsistent statements by witnesses are not hearsay. That section of the article provides that a prior statement by a witness is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is:
(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement; ...
La. C.E. art. 801(D)(1)(a), as quoted above, was in effect at the time of defendant’s instant trial. It was enacted by Acts 2004, No. 694, § 1, rewriting the provision, which had read:
(a) Inconsistent with his testimony, and was given under oath subject to the penalty of perjury at the accused’s preliminary examination or the accused’s prior trial and the witness was subject to cross-examination by the accused;
LoThus, prior to the 2004 amendment, prior inconsistent statements of a witness had to have been given under oath at the accused’s preliminary examination or prior trial, and the witness had to have been subject to cross-examination at that time by the accused, in order that such prior inconsistent statements be considered non-hearsay.[14] The amended version of La. C.E. art. 801(D)(1)(a) “is substantially broader than its predecessor, and renders most prior inconsistent statements admissible for their substantive or assertive value as well as their impeachment value in criminal cases if the proper foundation is established.” Authors’ Note 3, Handbook on Louisiana Evidence Law, Pugh, Force, Rault, Triche (2011). As previously emphasized, at no time did the defendant’s trial counsel object that the prior inconsistent statements were not admissible under La. C.E. art. 801(D)(1)(a).
However, on appeal the defendant argues that the requirements of La. C.E. art. 801(D)(1)(a) were not met, alleging specifically, that “there is no evidence in the record to factually corroborate the naming of John Duncan as the shooter in this incident.” Thus, the defendant’s argument appears to be that the prior inconsistent statements by Atkins, Curtis, and Walls qualify as hearsay under that provision and thus were inadmissible with regard to the identification of defendant as the shooter. This argument is misplaced because the crucial identification parts of the *518 prior inconsistent statements of the three witnesses were non-hearsay under La. C.E. art. 801(D)(1)(c), and thus were clearly admissible as substantive evidence.
| „Whereas art. 801(D)(1)(c) is limited to prior statements of identification, and therefore applies to the statements of Atkins, Curtis and Walls identifying John Duncan as the shooter, art. 801(D)(1)(a) can also apply to- general “non-identification” statements by Atkins, Curtis, and Walls as to the events immediately preceding and surrounding the murder. To the extent the defendant infers that other non-identification parts of the prior inconsistent statements of Atkins, Curtis, and Walls could not be used as substantive evidence under art. 801(D)(1)(a) because there was no additional evidence to corroborate the matters asserted therein, we will address this issue.
Gerone Walls told Det. Martin that he, J-Rock, “Kati” (later determined to be Atkins), and Cedric walked up Esplanade Avenue, turning on N. Dupre Street to follow the victim Daniel Breaux. Atkins and Curtis made similar assertions in their prior statements, as well as stating that they walked up Esplanade Avenue past the coffee shop. All three denied these facts at trial. However, as discussed below, we find that these facts were corroborated by additional evidence as required for admissibility under art. 801(D)(1)(a).
First, Sgt. Lumpkin testified that just before 8:00 p.m. that evening while sitting outside C.C.’s Coffee Shop on Esplanade Avenue with other officers, he saw four males walking from N. White Street pass in front of him. He saw their faces because he testified that each one smiled at him. He then watched the four take a left on N. Dupre Street and disappear around the corner. Sgt. Lumpkin also testified that he saw Atkins in a police car on the night of the murder and identified 122him as one of the youths he had seen walking past the coffee shop. He further testified that he later saw photographs of the four youths on Det. Hart’s desk and told the detective that they were the ones he had seen outside the coffee shop. This evidence alone is sufficient under art. 801(D)(1)(a) to corroborate any prior statement by either Atkins, Curtis, or Walls, that was inconsistent with their denials at trial of having previously stated that they had been with defendant and the others that day. Other independent evidence established that these individuals were together near the scene just moments before the murder, making it highly relevant.
Similarly, Sgt. Conerly testified that while patrolling that evening, he saw a bearded white male walking down N. Dupre Street with four black males behind him. After driving around the block, he again observed the victim walking under a street light with the same four black males behind him. After passing them, Sgt. Conerly heard a gunshot while he was exiting his vehicle. This is additional evidence under art. 801(D)(1)(a) tending to corroborate any prior statement by either Atkins, Curtis, or Walls, which was inconsistent with their denials at trial that they had been with defendant and the others that night. Although Sgt. Conerly did not identify the defendant or the other three youths as having been the ones he observed, it could be inferred by the trier of fact, based on Sgt. Lumpkin’s testimony, and other evidence, that they were the same individuals.
Further, at trial, when the prosecutor asked Kelvin Atkins about being out that day and witnessing a murder, Atkins said, “I witnessed a murder. I ran with — I ran with the people I was with.” Atkins next replied in the affirmative to the prosecutor’s follow up question: “And you were with John Duncan, Gerone Walls, and Ce *519 dric Curtis that day, right?” When the prosecutor asked Atkins if “[t]his man sitting right here is J-Rock,” Atkins replied “I know him as J-Rock.” The | ^prosecutor made the point even more clear by asking Atkins, “You do know him as J-Rock, right?” And Atkins replied, ‘Tes, sir.” This testimony by Atkins at trial is additional evidence, under 801(D)(1)(a), corroborating any prior statement by Atkins, Curtis, or Walls that was inconsistent with their denials at trial that they were with the defendant or that the defendant was in fact J-Rock, the person they had previously identified as the shooter.
Therefore, we find no merit in defendant’s argument that there was insufficient additional corroborating evidence to permit the introduction by the State, pursuant to La. C.E. art. 801(D)(1)(a), of certain prior inconsistent statements by Atkins, Curtis, and/or Walls relating to the events immediately preceding and surrounding the murder of Daniel Breaux.[15]
Nevertheless, defendant suggests that, despite the wording of art. 801(D)(1)(a), “the jurisprudence has not specifically reconciled the tensions between C.E. art. 801(D)(1)(a) and C.E. art. 607(D).” Defendant asserts that the bar on the use of an inconsistent statement of a witness as substantive evidence of the guilt of the defendant “remains viable, although it is recognized that conflicting jurisprudence does exist,” citing State in Interest of D.W., 2009-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048. Defendant correctly describes D.W. as a plurality decision. However, two judges of the three-judge panel in D.W. agreed that the prior inconsistent statements of witnesses — upon which the defendant’s adjudication of delinquency for two counts of attempted first degree murder was based — were admissible as substantive evidence of the defendant’s guilt under La. C.E. art. 801(D)(1)(c) and pursuant to La. C.E. art. 801(D)(1)(a).
la/The dissenting judge in D.W. found that the prior inconsistent statements were not admissible as substantive evidence pursuant to La. C.E. art. 801(D)(1)(c) because the identifications of the defendant by the two witnesses were not accomplished at formal lineup procedures. However, eight years before D.W. was decided, in Stokes, supra, the Louisiana Supreme Court held that a prior inconsistent statement by the victim of a shooting — made to police officers on the scene — that the defendant (her boyfriend) shot her, was admissible as a prior inconsistent statement of identification of a person pursuant to La. C.E. art. 801(D)(1)(c). That identification of the shooter in Stokes clearly was not made during a formal lineup procedure. The dissenting judge also noted the lack of additional corroborating evidence. In the instant case, unlike in D.W., there was additional evidence to corroborate the prior inconsistent statements by Atkins, Curtis, and Walls as to events immediately preceding and surrounding the murder, as required for admissibility under La. C.E. art. 801(D)(1)(a).
In State v. Harper, 2007-0299 (La.App. 1 Cir. 9/5/07), 970 So.2d 592, the defendant argued on appeal that the trial court had erred in admitting the written out-of-court statements of two witnesses who testified at trial, and that the State had erroneously used the statements as substantive evidence instead of solely for purposes of impeachment. The appellate court found *520 that the two witnesses’ admissions during their trial testimony operated to impeach them, rendering it unnecessary to admit the written prior inconsistent statements themselves for impeachment purposes. Thus, the court found the trial court had erred in admitting the written prior inconsistent statements for impeachment pursuant to La. C.E. art. 607(D). However, the appellate court further found that the written statements had 125been properly admissible under La. C.E. art. 801(D)(1)(a) as non-hearsay statements admissible “as substantive proof of the offense.” Harper, 2007-0299, p. 13, 970 So.2d at 601.
Louisiana criminal statutes must be “given a genuine construction, according to the fair import of their words, taken' in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La. R.S. 14:3. The prior inconsistent statements of Atkins, Curtis, and Walls, to the extent they concerned matters immediately preceding and surrounding the murder of Daniel Breaux, were not hearsay under La. C.E. art. 801(D)(1)(a), as it is written, and thus were admissible as substantive evidence, for the truth of the matter asserted. La. C.E. art. 801(D)(1)(c) provides for an exception to the general rule that impeachment evidence is not admissible as substantive evidence. Logically, La. C.E. art. 801(D)(1)(a) provides for the same exception.
For the foregoing reasons, we reject defendant’s argument that the prior inconsistent statements by Atkins, Curtis, and Walls — both the crucial statements identifying defendant as the individual who attempted to rob the victim and then shot him in the back of the head, as well as statements relating to the events immediately preceding and surrounding the murder — were only admissible for impeachment purposes. We find that the statements were not hearsay under La. C.E. art. 801(D)(1)(a) or (c), and thus were admissible as substantive evidence/for the truth of the matter asserted.
Accordingly, there is no merit to defendant’s claim that the evidence was insufficient to sustain his conviction.

\ ^ASSIGNMENT OF ERROR NO. 2

In defendant’s second assignment of error, he argues that this court’s two prior writ decisions denying his respective writ applications from the trial court’s denials of his two separate motions to quash should be reevaluated in light of the entire record.
Under the law-of-the-case doctrine, courts of appeal generally refuse to reconsider their own rulings of law on a subsequent appeal in the same case. Pitre v. Louisiana Tech University, 95-1466, p. 7 (La.5/10/96), 673 So.2d 585, 589. This court has stated that an appellate court will not reverse its pretrial determinations unless the defendant presents new evidence tending to show that the decision was patently erroneous and produced an unjust result. State v. Gillet, 99-2474, p. 5 (La.App. 4 Cir. 5/10/00), 763 So.2d 725, 728. The “law of the case” doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not merely those arising from the full appeal process. State v. Molineux, 2011-0275, p. 3 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, 619.
In the instant case, defendant does not present any new evidence bearing on the correctness of this court’s prior decisions as to the trial court’s denials of defendant’s two motions to quash. Therefore, defendant has failed to demonstrate that this court should hot decline to reconsider its prior rulings pursuant to the law of the case doctrine.
*521 However, addressing the merits, we note that a trial court’s ruling on a motion to quash should not be disturbed on review absent an abuse of discretion. State v. Sorden, 2009-1416, p. 3 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 183; see also State v. Love, 2000-3347, p. 12 (La.5/23/03), 847 So.2d 1198, 1208. The ^defendant's motions to quash were based upon the alleged failure of the State to timely commence trial. In the instant case the State had two years from the date of institution of the prosecution to commence defendant’s trial pursuant to La. C.C r.P. art. 578, stating, in pertinent part:
A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
(1) In capital cases after three years from the date of institution of prosecution:
(2) In other felony cases after two years from the date of institution of the prosecution; ...
[[Image here]]
B. The offense charged shall determine the applicable limitation.
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by art. 578 shall be suspended until the ruling of the court thereon, but in no case shall the State have less than one year after the ruling to commence the trial. La.C.Cr.P. -art. 580. When a defendant obtains a new trial, the State must commence the second trial within one year from the date the new trial is granted, or within the period established by La. C.Cr.P. art. 578, “whichever is longer.” La. C.Cr.P. art. 582. A preliminary plea that suspends the running of the prescrip-five period under La.C.Cr.P. art. 580(A) is any pleading or motion filed by defendant that has the effect of delaying trial. State v. Brooks, 2002-0792, p. 6 (La.2/14/03), 838 So.2d 778, 782. These include properly filed motions to quash, motions to suppress, motions for a continuance, joint motions for continuance, as well as applications for discovery and bills of particulars. Id.
12SWhen a defendant has brought an apparently meritorious motion to quash based on the failure to timely commence trial, the State bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have run. State v. Rome, 93-1221, p. 4 (La.1/14/94), 630 So.2d 1284, 1286; State v. Ramirez, 2007-0652, p. 4 (La.App. 4 Cir. 1/9/08), 976 So.2d 204, 207.[16]

First Motion to Quash

Mr. Duncan’s first motion to quash was based on the failure to timely commence trial after the trial court granted his first motion for new trial on August 19, 2005. On February 17, 2006, the trial court granted the State’s motion for an out-of-time appeal of the trial court’s August 19, 2005 grant of the motion for new trial, setting a return date for April 17, 2006, which date was extended on April 17, 2006 to June 9, 2006. On May 9, 2006, this court denied as moot (due to the trial’s court’s August 19, 2005 granting of the defendant’s motion for new trial) the defendant’s motion filed in this court to: (1) summarily reverse his conviction and sentence and grant him a new trial due to the failure of the court reporter to produce his trial transcript and to have the record lodged for his appeal; or (2) alternatively, *522 grant a writ of mandamus directing the trial court to ensure the lodging of the record in his appeal.[17] On November 2, 2006, defendant filed his first motion to quash the indictment due to the State’s failure to timely commence trial, which motion was denied by the trial court on February 2, 2007. Defendant sought supervisory review in this court. His writ application seeking such review, State v. Duncan, 2007-K-0317, was consolidated with the State’s out-of-time appeal of the trial court’s granting of the defendant’s motion for new trial.
In State v. Duncan, 2006-1029 (La.App. 4 Cir. 5/9/07), 957 So.2d 858, this court held that the State’s out-of-time appeal was untimely and thus dismissed it. In the defendant’s consolidated writ application from the denial of his motion to quash, this court held that at the time the trial court granted the defendant’s motion for new trial on August 19, 2005, it had been divested of jurisdiction by its April 13, 2005 granting of his motion for appeal and setting of a return date of June 13, 2005— with this court noting that no action had been taken by either the defendant or the State to relieve this court of its jurisdiction. This court remanded the case for “further proceedings, including a hearing on the motion for new trial.” 2006-1029, p. 4, 957 So.2d at 861. This court denied the defendant’s timely filed application for rehearing, and the Louisiana Supreme Court denied his application for writ of certiorari. State v. Duncan, 2007-1223 (La.12/14/07), 970 So.2d 530.
On appeal, the defendant argues that the May 9, 2006 ruling by this court “appears to have ratified the trial judge’s August 19, 2005 grant of a new trial when it determined counsel’s attempts to have Mr. Duncan’s initial appeal lodged mooted by the action,” and that this court’s “subsequent judgment setting the new trial aside for lack of jurisdiction appears to be inconsistent.” Thus, Mr. Duncan claims that an action by this court subsequent to an earlier action was inconsistent with the earlier action.
However, at the time this court denied the defendant’s “motion” in May of 2006, not only had the trial court granted the defendant’s motion for new trial on August 19, 2005, but also had granted the State’s motion for an out-of-time appeal of the granting of defendant’s motion for new trial.' The defendant does not cite |3nany objection his counsel made to the trial court’s granting of the out-of-time appeal. The procedural posture of these matters effectively mooted, at least at that time, the defendant’s “motion,” which sought the granting of a new trial for a different reason — the failure of the court reporter to produce his trial transcript and to have the record lodged for his appeal.
A new trial had already been ordered and, if the new trial order was to withstand the State’s attack in it’s out-of-time appeal granted by the trial court, then issuing a writ of mandamus directing the trial court to see to it that the defendant’s appeal was lodged in this court would have been vain and futile. In finding the defendant’s motion moot, this court did not ratify the trial court’s August 19, 2005 granting of the defendant’s motion for new trial. That this court did not, sua sponte, address the jurisdictional issue at that time does not render incorrect or inconsistent this court’s later decision finding that the trial court had been divested of jurisdiction to rule on the defendant’s motion for new trial on August 19, 2005 by virtue of having granted the defendant’s motion for appeal. There is no merit to Mr. Duncan’s assertions that we should revisit the issue *523 and uphold the trial court’s August 19, 2005 granting of his motion for new trial.

Second Motion to Quash

Following this court’s decision in State v. Duncan, 2006-1029 (La.App. 4 Cir. 5/9/07), 957 So.2d 858, remanding the case for further proceedings, including a hearing on the defendant’s motion for new trial, this court denied the defendant’s timely filed application for rehearing and the Louisiana Supreme Court denied his application for writs in State v. Duncan, 2007-1223 (La.12/14/07), 970 So.2d 530. Thereafter, on July 29, 2008, the trial court granted, as the defendant characterizes 13! it, his “second motion for new trial.” The defendant correctly asserts that that his retrial commenced on March 16, 2010.
Under La.C.Cr.P. art. 582, when a defendant obtains a new trial, the State must commence the new trial within one year from the date the new trial is granted, or within the period established by La.C.Cr.P. art. 578, whichever is longer. However, the one-year period for commencing the second trial begins to run after the judgment granting the new trial becomes final. State v. Bennett, 610 So.2d 120 (La.1992).
Following the trial court’s July 29, 2008 granting of the defendant’s second motion for a new trial, the State timely sought supervisory review of that ruling in this court. This court denied the defendant’s writ application on October 16, 2008, and the Louisiana Supreme Court denied the State’s application for writs on October 24, 2008.[18] Under La.C.Cr.P. art. 922(D),[19] the judgment granting the defendant’s second motion for new trial became final on October 24, 2008. Pursuant to La.C.Cr.P. art. 582, the State had one year from that date, or until October 24, 2009, within which to commence trial.
13⅞A December 5, 2008 corrected minute entry[20] reflects that the defendant filed a notice of intent on that date to use statements under a provision of La. C.E. art. 804(B)(6),[21] whereupon the trial court re *524 cessed the matter for the State’s response. A December 12, 2008 corrected minute entry reflects that on that date the trial court ruled that such evidence would be admissible, with certain conditions.[22] On December 17, 2008, the State timely noticed its intent to seek supervisory review of the trial court’s December 12, 2008 ruling. This court denied the State’s writ application on March 26, 2009.[23] Under La. C. Cr. P. art. 922(B) and Rule 2-18.2(A), Uniform Rules of Louisiana Courts of Appeal,[24] the judgment granting the defendant’s motion/notice of intent to use the prior statements became final on April 9, 2009.
lasThe defendant’s filing of the notice of intent/motion to use the prior statements of unavailable witnesses pursuant to La. C.E. art. 804(b)(6) constituted the filing of a preliminary plea that had the effect of delaying trial and thus suspended the running of the prescriptive period under La.C.Cr.P. art. 580(A).
Bennett, supra, is logically applicable not only to the one-year period for commencing a second trial after a defendant has been granted a new trial, but also to the one-year period for commencing trial after a judgment of the trial court concerning a motion to quash or other preliminary plea suspending the running of the time periods for commencing trial has become final. in accordance with La.C.Cr.P. art. 922.
Thus, considering that the trial court’s judgment allowing the defendant to present the statements of the unavailable witnesses pursuant to La. C.E. art. 804(B)(6) did not become final until April 9, 2009, the State had until April 9, 2010, to commence defendant’s retrial. The trial was timely commenced on March 16, 2010.
We therefore find no merit to this assignment of error.

DECREE

. For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED

. Defendant was jointly indicted with Kelvin Atkins, Cedric Curtis and Gerone Walls, but the State nolle prosequied the respective charges against Curtis and Walls on June 4, 2007, and the charge against Atkins on April 14, 2009. Atkins entered into an agreement with the State, pleading guilty to accessory after the fact, and was sentenced to five years in exchange for testifying against the remaining defendants.

. See La. Ch.C. art. 857(B), providing, in pertinent part, that a child convicted of, inter alia, second degree murder, who was fourteen-years-old at the time of the commission of the offense and who was transferred under the article for prosecution of that offense from juvenile court to the appropriate court exercising criminal jurisdiction, "shall not be confined for such conviction beyond his thirty-first birthday.”

. The existence of a previously undisclosed child witness to the murder was alleged to be the newly discovered evidence.

. August 19, 2005 was the last noted district court activity involving defendant's case until February 7, 2006, when a February 13, 2006 hearing date was set for the State’s motion for production of evidence.

. State v. Duncan, unpub., 2006-0427 (La. App. 4 Cir. 5/9/06).

. State v. Duncan, 2007-1223 (La. 12/14/07), 970 So.2d 530.

. State v. Duncan, unpub., 2008-1117 (La. App. 4 Cir. 10/16/08), writ denied, 2008-2533 (La. 10/24/08), 992 So.2d 1024.

. State v. Duncan, unpub., 2009-0081 (La. App. 4 Cir. 3/26/09).

. State v. Duncan, unpub., 2010-0395 (La. App. 4 Cir. 3/15/10), writ denied, 2010-0607 (La.3/17/10), 29 So.3d 1244("Stay denied, writ denied, on the showing made.”).

. State v. Duncan, unpub., 2010-0396 (La. App. 4 Cir. 3/16/10).

. Joseph Zardies also testified. Zardies, a black male who was nineteen years old at the time of the murder, confirmed that he had been detained and questioned by the police regarding the shooting, but had been cleared of any involvement and released after an hour of questioning.

. La.C.Cr.P. art. 873 states:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

. See footnote 3, supra, for text of La. Ch.C. art. 857(B).

. It is to be noted that defendant assumes La. C.E. art. 801(D)(1)(a), as amended in 2004 by Acts 2004, No. 694, § 1 was applicable in his trial. The amending legislation was not passed until after the May 1, 2004 commission of the offense for which he was convicted, and did not become effective until August 14, 2004. However, defendant makes no argument such as that the application of the amended provision in his case would violate the Ex Post Facto Clause of the U.S. Constitution.

. Notably, defendant does not argue that the State failed to first fairly direct the witnesses’ attention to the prior inconsistent statements and give them the opportunity to admit the fact, as required by art. 801(D)(1)(a), or that any other foundational requirement of La. C.E. art. 801(D)(1)(a) was not met.

. Defendant does not argue that he was denied his constitutional right to a speedy trial, nor did he argue that issue in either of his two motions to quash.

. State v. Duncan, unpub., 2006-0427 (La. App. 4 Cir. 5/9/06).

. State v. Duncan, unpub., 2008-1117 (La. App. 4 Cir. 10/16/08), writ denied, 2008-2533 (La. 10/24/08), 992 So.2d 1024.

. La.C.Cr.P. art. 922 states:
A. Within fourteen days of rendition of the judgment of the supreme court or any appellate court, in term time or out, a party may apply to the appropriate court for a rehearing. The court may act upon the application at any time.
B. A judgment rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made.
C. If an application for a rehearing has been made timely, a judgment of the appellate court becomes final when the application is denied.
D. If an application for a writ of review is timely filed with the supreme court, the judgment of the appellate court from which the writ of review is sought becomes final when the supreme court denies the writ.

. See "Motion to Correct Minute Entries.”

. La. C.E. art. 804(B)(6), applicable in criminal matters where the exclusion of evidence as hearsay would impair a defendant’s right to present a defense (State v. Winn, 97-2509, p. 11 (La.App. 4 Cir. 1/14/98), 705 So.2d 1271, 1276) states:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
[[Image here]]
(6) Other exceptions. In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his *524 intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence.

. See "Motion to Correct Minute Entries.”

. State v. Duncan, unpub., 2009-0081 (La. App. 4 Cir. 3/26/09).

. Rule 2-18.2(A) states:
In all cases governed by the Code of Criminal Procedure, an application for rehearing must be filed with the clerk on or before 14 days after the rendition of the judgment.