MAX N. TOBIAS, JR., Judge.
| iQn 6 December 2007 the state filed a bill of information charging the defendant/appellant, Pamela S. Brown (“Brown”), with one count of theft in an amount over $500.00, a violation of La. R.S. 14:67. Brown entered a not guilty plea at her arraignment on 13 December 2007. On 29 January 2008 Brown was tried before a six-person jury that returned a verdict of guilty as charged. Sentencing was delayed for several months during which time Brown was attempting to pay restitution and a presentence investigation report was being prepared. By 9 *1239 May 2008 she had paid full restitution to the victim. On 13 May 2008 the trial court sentenced Brown to serve four years at hard labor. The court then denied her motion to reconsider sentence but granted her motion for an appeal.

STATEMENT OF THE FACTS

On 8 October 2007, Mr. Walid Kronfel was working at the Algiers Central Market, a grocery store and check cashing service that he owned. The defendant,[1] whom Mr. Kronfel recognized from prior times she had been in his store, approached the counter and presented a check which she wished to have cashed. She showed Mr. Kronfel her identification card, and when he told her the picture 1 ¿did not look like her, she said it was because she was wearing a wig and removed it to show him. Mr. Kronfel noticed the defendant appeared very nervous, even smoking a cigarette in the store. Therefore, he examined the check which Brown had given him and concluded that it looked legitimate. Brown endorsed the back of the check, and then in accordance with Mr. Kronfel’s usual procedure for cashing checks, she placed her thumbprint on the check. Mr. Kronfel then used a camera and took a split image picture of Brown, the check, and her identification. After completing these steps, Mr. Kronfel paid Brown the face amount of the check, $1256.09, less a check-cashing fee. The net amount according to Mr. Kronfel was $1221.00.
After Brown cashed the check, another person approached Mr. Kronfel and presented a check purporting to be from the same company and drawn on the same bank as that which Brown had just cashed. Becoming suspicious, Mr. Kronfel told the second customer that he did not have sufficient funds to cash the check. Mr. Kron-fel’s wife then placed phone calls in an attempt to find out if the company shown on the payroll check existed or had an account. Mr. Kronfel testified at trial that his wife was unable to confirm the existence of the company. The trial court sustained the defense counsel’s hearsay objection to Mr. Kronfel’s further testimony that customer service personnel at Bank of America, the bank upon which the check was supposedly drawn, advised that there was no account number corresponding to the number on the check.
Mr. Kronfel also testified that he first tried to follow a vehicle or vehicles in which Brown and the other person who tried to cash a check left the store. ^Because they were speeding he did not follow them. Instead he drove to the address on Brown’s identification. When he arrived, he saw her getting out of the car. He confronted Brown and demanded his money back. She ran inside the house and would not respond to Mr. Kronfel’s attempts to have her open the door. Mr. Kronfel then looked down the side of the house and saw Brown trying to jump the fence. He was able to catch her and again demanded his money. Brown had approximately $100.00 in her hand which Mr. Kronfel took from her. She told him that the rest of the money was in the house and that she would go inside and get it. Mr. Kronfel agreed to wait outside the house, but when she did not come back out within a short time, he called the police.
Officer Alvin Walton testified at trial that he and Sergeant Kevin Guillot responded separately to the call from Mr. Kronfel. After interviewing the victim, the officers approached the residence and *1240 knocked at the door for several minutes. Finally, a woman named Lisa Hansel opened the door and stated that it was her residence. She admitted that Brown was inside and allowed the officers to enter. The officers searched the house twice before they found Brown hiding in a laundry chute in the bathroom. Also hiding in the chute was another woman, whom Officer Walton testified was a resident of a nearby house and known to have mental problems.
The police took custody of the check that Brown had cashed. At trial, Mr. Kronfel identified State’s Exhibit One as the photograph that he took of Brown, the check, and the identification. He identified Brown as the person who cashed the check. Officer George Jackson, a fingerprint expert, testified at trial that he compared the fingerprint on the check with the defendant’s fingerprint and that they were a match.

\ .ERRORS PATENT

A review of the record for errors patent reveals that none exist.

DISCUSSION

In a single assignment of error, Brown argues that no evidence was presented that she attempted to pass a bad check, and therefore the sentence must be reversed. The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. State v. Shaw, 07-1427, p. 15 (La.App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational triers’ view of all the evidence most favorable to the prosecution must be adopted. Id. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and | ^common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). Additionally, case law holds clearly that it is not the function of an appellate court to evaluate the credibility of the witnesses and to overturn the jury on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983).
In this case, Brown was convicted of theft of property having a value of more *1241 than $500.00. The offense of theft is defined in La. R.S. 14:67 that in pertinent part reads:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Thus, in order for Brown’s conviction to be upheld on appeal, the state must have proven the following essential elements beyond a reasonable doubt: (1) that the defendant misappropriated or took by means of fraudulent conduct, practices, or representations; (2) a thing of value; (3) that belonged to another; and (4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Pittman, 368 So.2d 708 (La.1979). The state must further prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted | (¡offender. State v. Monterroso, 96-376 (La.App. 5 Cir. 11/14/96), 685 So.2d 249, 251; La. R.S. 14:67 B.[2]
Brown argues that there was insufficient evidence to show that she intentionally and fraudulently cashed a check that was not a legitimate instrument. She notes in particular that the state presented no evidence to show that the check was not honored by the bank upon which it purportedly was drawn because Mr. Kronfel never attempted to negotiate the check. As to the circumstantial evidence of guilt, she admits that there was evidence that she attempted to hide from the police. However, she also contends that there is circumstantial evidence which supports the conclusion that she did not intend to defraud Mr. Kronfel, specifically that she used her own identification, which contained a correct address; she placed her fingerprint on the check; and she allowed Mr. Kronfel to take her photograph. Furthermore, she presented the check at a location where she was known to the owner, and when he did not recognize her identification picture, she removed her wig.
Brown also argues that the fact that she did not return the money when Mr. Kron-fel offered not to call the police if she did so shows that she “stood upon a belief that she had a right to keep it” and that she only ran and hid from Mr. Kronfel because he was “an enraged man trying to take her money away.” However, the alleged circumstantial evidence that she believed the money was legally hers is undercut significantly by the lack of evidence that she was in possession of the money when the police arrested her only a short while after she Jjhad cashed the check. Moreover, rather than call the police herself when confronted by Mr. Kronfel, she first tried to run away and then hid in a laundry chute.
We find that Brown is correct in the portion of her argument wherein she suggests that the hearsay testimony to which the defense successfully objected was damaging evidence to show that she cashed a bad check. As noted above, Mr. Kronfel testified that his wife learned from the bank’s customer service personnel that the account shown on the check was non-existent and that the alleged payor-company on the cheek also did not exist. The defense objected immediately after Mr. *1242 Kronfel testified that the Bank of America “said there is no account.” The court sustained the objection “[a]s to anything Bank of America may have said” Despite the court’s ruling, Mr. Kronfel immediately continued with similar hearsay testimony:
A. We find out that there is no account exist [sic] and no company exist [sic],
Q. Okay, And, did you — how did you get in touch with Bank of America?
A. We just called their customer service to verify the check.
Q. Did they ask you for any information off of the check?
A. Yes, they asked for the account number and they asked for the — the title on the check.
Q. The what, I’m sorry.
A. The title, the name on the check.
Q. Okay.
A. Who—
Q. Did you give them that information?
|8A. It’s really not me. My wife did this work.
Q. Okay.
A. This process.
Q. Okay, And what did you learn from that process?
Defense counsel made another objection before the witness answered the prosecutor’s last question. The court sustained the objection, noting that it had “already done so,” and directed the prosecutor to move on. The prosecutor then began to question Mr. Kronfel on another issue, although he returned to the subject briefly on redirect. At that time, the prosecutor asked Mr. Kronfel about the photograph of the check and whether it reflected “the same check number that you presented to Bank of America” Mr. Kronfel responded that it was “the one we called to verify.”
Whether admissible or inadmissible, hearsay evidence is to be considered when assessing the conviction for sufficiency of the evidence. See State v. Hearold, 603 So.2d 731, 734 (La.1992), in which the court stated:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
|flOn the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, *1243 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). [Footnote omitted.]
Here, a review of all of the evidence, including Mr. Kronfel’s testimony that representatives from the Bank of America informed his wife that the account number on the check did not exist and that his wife had learned that the company whose name was on the check was non-existent, as well as Brown’s attempts to flee and then conceal herself from the police, shows that it was sufficient to support the jury’s verdict. Thus, although some of the testimony may have been hearsay, Brown is not entitled to a verdict of acquittal.
Furthermore, in contrast to Hearold, Brown is not entitled to any other relief herein. In Hearold, the defendant unsuccessfully moved for a mistrial after his objection to hearsay testimony was sustained. Because the trial court’s error in denying the motion for mistrial was not harmless, the Supreme Court ordered that the defendant be retried. In contrast the defense in the instant case neither asked for an admonishment nor moved for a mistrial after the trial court sustained the _|_i!Jdefense objection to Mr. Kronfel’s testimony regarding what his wife was told. Thus, she has no other grounds for relief arising from the hearsay testimony.[3]
We conclude that the assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of Pamela S. Brown.
AFFIRMED.
JONES, J., dissents with reasons.

. The bill of information initially stated that the defendant’s name is Pamela Brown. The bill was amended on January 29, 2008 at the beginning of trial to add that she is also known as Pamela Selfe, which was the name she was using at the time of the offense.

. La. R.S. 14:67 B(l) provides that the penalty for theft of property valued in excess of $500.00 shall be imprisonment with or without hard labor for not more than ten years, or a fine of not more than three thousand dollars, or both.

. No claim is made by Brown in her appeal that she had ineffective assistance of counsel; that issue is properly addressed on an application for post-conviction relief. State ex rel. Glover v. State, 97-1474 (La. 12/19/97), 704 So.2d 242; see also Rule 2-12.24, Uniform Rules, Cts. of App.