MADELEINE M. LANDRIEU, Judge.
| Appellant, James J. Kenny, Jr., was convicted of vehicular homicide in violation of Louisiana Revised Statute 14:32.1. He was sentenced to five years at hard labor, without benefit of parole, probation, or suspension of sentence, and fined $2,000.00. For the reasons that follow, we reverse Mr. Kenny’s conviction.
FACTS AND PROCEEDINGS BELOW
On February 24, 2009 (Mardi Gras day) at approximately 8:30 p.m., Mr. Kenny was driving on Tulane Avenue near its intersection with South Gayoso Street.[1] Testimony established that the victim and several other people had just crossed one side of Tulane Avenue, reaching the neutral ground. As the victim attempted to cross the other side of Tulane Avenue, he was struck by Mr. Kenny’s vehicle. No one who testified actually saw Mr. Kenny’s vehicle strike the victim, but evidence established that the victim was dragged some distance under Mr. Kenny’s car and suffered multiple blunt force traumas, abrasions, and lacerations. He died as a result of these injuries.
On the evening in question, Richard Jones was in front of a nearby business, the Chat Room, where he and some *994 friends had just set up D.J. equipment, He ^testified that music was playing, but otherwise the street was quiet. Üpon hearing a loud impact, Mr. Jones looked up, saw a white sport utility vehicle (Mr. Kenny’s vehicle) that seemed to have come out of nowhere, and heard a girl scream. He did not hear any braking sounds. When the car did not stop, one of Mr. Jones’s friends took off running and chased it down. His friend ran alongside the vehicle yelling until the driver pulled over to the right. At one point, Mr. Jones testified that the SUV stopped in the “the middle of the next block.” Later in his testimony, he described this distance as “a half a block down the street.” After Mr. Kenny’s vehicle stopped, Mr. Jones saw an individual, whom he had seen earlier crossing the street, roll out from under the vehicle. He stated that the victim apparently had been dragged after he was struck by Mr. Kenny’s vehicle. Mr. Jones further testified that people gathered at the scene and were quite upset. Some threatened Mr. Kenny, but Mr. Jones kept them at bay.
Two officers with the Traffic Fatality Unit of the New Orleans Police Department (NOPD), who responded to the accident, testified as to their part in the investigation. Officer Michael Baldassaro testified that he photographed the scene of the accident. Officer Michael Wahl testified that he participated in the arrest of Mr. Kenny.
Officer Wahl testified that when he first arrived on the scene, EMS and fire units were already there. It was dark and difficult to see. He spoke with Mr. Kenny who was nervous and upset. Mr. Kenny smelled strongly of alcohol. Because of the strong odor of alcohol, Officer Wahl turned Mr. Kenny over to a First District Unit to be transported to the DWI station for testing. Mr. Kenny was then [.¡transported to University Hospital where blood was drawn by Ms. Rachael Stephenson, a registered nurse, at the direction of and while in the custody of law enforcement. Officer Wahl then took the blood samples to the New Orleans Police Department Evidence Room. Finally, with respect to his investigation, Officer Wahl testified that he and Officer Baldassaro tried to locate the people who were with the victim when he was struck by Mr. Kenny, but they were unable to locate them.
In addition to his testimony as to his investigation of the accident, Officer Wahl was offered by the State and accepted by the court as an expert in accident reconstruction. He presented a diagram that he constructed of the site of the accident, but did express an expert opinion as to the cause of the accident. Officer Wahl expressed no opinion as to the point of impact between Mr. Kenny’s SUV and the victim; he expressed no opinion as to the lane of travel Mr. Kenny and the victim were in at the time of impact; and he expressed no opinion as to the estimated speed of Mr. Kenny’s vehicle before or after the point of impact. Officer Wahl offered no opinion as to how close a reasonable person driving the speed limit would have had to be to notice the pedestrian in the roadway (assuming he was there) and take corrective action. Officer Wahl did testify that there were no skid marks at the scene, but gave no opinion as to what conclusion could be drawn from their absence.
Mr. Michael Sunseri, an expert in accident reconstruction, was called to testify on Mr. Kenny’s behalf. Mr. Sunseri relied on the police report, photographs, the autopsy report, and his reconstruction of the accident to form his opinion. He testified that there was not enough evidence for him to calculate the speed at which Mr. *995 Kenny’s vehicle was traveling. However, based upon the fact |4that the victim did not strike the windshield, Mr. Sunseri estimated that Mr. Kenny’s speed was not more than fifty miles per hour.[2] Using photographs of the scene and visibility calculations that he performed, Mr. Sunseri opined that pedestrian error caused the accident. He opined that because of the darkness, Mr. Kenny could not have seen the victim step into the street in time to avoid hitting him, and that even a sober person would have struck the victim under these circumstances. Mr. Sunseri acknowledged, however, that a blood alcohol level of 0.16 gram percent was significant and “would certainly” impair a person’s ability to react.
Nam Tran, who was qualified as an expert in forensic toxicology analysis, tested the blood samples taken from Mr. Kenny. The samples were delivered to the lab for analysis on April 7, 2009, and the analysis was conducted on May 4, 2009. To ensure the precision of the analysis, Mr. Tran conducted testing on two replicate samples of the blood. The tests showed that Mr. Kenny’s blood alcohol level was 0.16 gram percent.
Prior to trial, Mr. Kenny filed a motion to suppress the blood results, alleging that the arresting officer did not adhere to the regulations promulgated in the Louisiana Administrative Code as mandated by La. R.S. 32:662 for the analysis of blood samples. At a hearing on the motion, the State and counsel for Mr. Kenny stipulated to the following: on February 24, 2009, a sample of blood was taken from Mr. Kenny; also on February 24, 2009, the kit containing the sample was delivered to Officer Wahl; on February 25, 2009, Officer Wahl delivered the sample to the New Orleans Police Department Evidence Room; and on April 7, 2009, Officer Wahl delivered the sample to the Louisiana State Police Crime 15Lab oratory for analysis. The State conceded that it did not strictly comply with the Administrative Code regulations because Officer Wahl did not deliver the sample to the laboratory within the seven-day time period provided therein.[3] The samples were not submitted to the Louisiana Crime Laboratory for analysis until April 7, 2009-42 days after the sample was taken. The district court denied the motion to suppress, but ruled that the State could not rely on the presumption of intoxication found in La. R.S. 32:662 because of this noncompliance.
A bench trial was held on July 18 and August 5, 2011. The trial court found Mr. Kenny guilty as charged of vehicular homicide. In accordance with Louisiana Revised Statute 14:32.1(B), the court sentenced Mr. Kenny to five years at hard labor, without benefit of parole, probation, or suspension of sentence, and fined him $2,000.00. Mr. Kenny timely filed the instant appeal.
ERRORS PATENT
A review of the record for errors patent reveals none. See, La.C.Cr.P. art. 920(2).
ASSIGNMENTS OF ERROR
1. Mr. Kenny contends that the evidence was insufficient to support the guilty verdict.
*996 2. Mr. Kenny contends that he was denied his due process rights when the trial court allowed the State to introduce the results of the blood alcohol test at trial.
3. Mr. Kenny contends that the failure of the bill of information to include the issue of blood alcohol content over 0.15 percent as an element of the offense did not give him fair notice of the offense charged.
|fi4. Mr. Kenny contends that the sentence imposed is excessive.
SUFFICIENCY OF EVIDENCE
By this assignment of error, Mr. Kenny asserts that the evidence was insufficient to sustain his conviction for negligent homicide. The standard of review for the sufficiency of the evidence is “whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Pursuant to Jackson, the totality of the evidence, direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Huckabay, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111.
It is well-settled that the entirety of the evidence, both admissible and inadmissible, is to be considered when assessing a conviction for sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Brown, 2008-1434, p. 8 (La.App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242. If a defendant claims on appeal that certain evidence was improperly admitted, and the reviewing court finds that any rational trier of fact, viewing all the evidence in a light most favorable to the prosecution, could have found all the essential elements of the offense present beyond a reasonable doubt, the reviewing court then reviews other assignments of trial errors to determine whether the defendant is entitled to a new trial. Hearold, 603 So.2d at 734; Brown, 7 So.3d at 1242.
If the reviewing court determines there has been a trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support 17the conviction, the defendant must receive a new trial. He is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. On the other hand, if the review of the entirety of the evidence, admissible and inadmissible, reveals that the evidence is insufficient, the defendant is entitled to an acquittal. Hearold, 603 So.2d at 734; Brown, 7 So.3d at 1242-1243.
The crime of vehicular homicide is defined by Louisiana Revised Statute 14:32.1, which provides in pertinent part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, ... whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
* * *
(4) The operator is under the influence of alcoholic beverages.
*997 In the instant case, Mr. Kenny’s argument on sufficiency of evidence is twofold. He urges that the State not only failed to prove that he was intoxicated but also failed to establish that any alleged intoxication caused the accident.
According to the record before us, the evidence introduced at trial of Mr. Kenny’s alleged intoxication when he struck the victim was Officer Wahl’s testimony that Mr. Kenny smelled strongly of alcohol at the time of the accident and that he was nervous and upset; Mr. Tran’s testimony that Mr. Kenny’s blood alcohol level was 0.16 gram percent;[4] and, evidence that Mr. Kenny drove some | ^distance after impact, implying that he was unaware that he had struck a pedestrian. The second of these is the subject of one of Mr. Kenny’s assignments of error and the last of these is circumspect. It comes in the testimony of Mr. Jones who testified that after he heard the impact, his friend ran alongside Mr. Kenny’s car causing Mr. Kenny to stop. This seems implausible if Mr. Kenny had been speeding (or even driving the speed limit) as Mr. Jones intimated in his testimony.[5] We note that this “friend” was not a witness at the trial. Assuming this collective evidence to be sufficient to prove Mr. Kenny’s intoxication beyond a reasonable doubt, we are still required to address the issue of causation.
In order to convict a defendant under the vehicular homicide statute, the State must prove that an offender’s unlawful blood alcohol concentration, combined with his operation of a vehicle, caused the death of a human being. State v. Taylor, 463 So.2d 1274, 1274-1275 (La.1985). “It is insufficient for the state to prove merely that the alcohol consumption ‘coincides’ with the accident.” State v. Archer, 619 So.2d 1071, 1074 (La.App. 1st Cir.1993).
The Louisiana Supreme Court has determined that a causal relation between the defendant’s conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor’s conduct. State v. Kalathakis, 563 So.2d 228, 231 (La.1990). A defendant should not be held responsible for remote and indirect consequences which a reasonable person could |9not have foreseen as likely to have flowed from his conduct or from those consequences which would have occurred regardless of his conduct. Id.
In the instant case, the State offered only circumstantial evidence of causation. Even though there was evidence that the victim was standing on the neutral ground with other people just prior to the accident, none of these witnesses were called or came forward to testify. Mr. Jones, who was across the street, testified that he did not actually witness the accident. He only witnessed the sudden appearance of a vehicle, but at all times that he observed the vehicle, it was in the lane closest to the neutral ground. He testified that he looked up when he heard what he believed to be the sound of the car hitting the victim. Testimony regarding the point of impact between Mr. Kenny’s car and the victim is scant, but at best, supports a finding that the impact between the car and the victim was on the front left corner of Mr. Kenny’s vehicle, indicating that the *998 victim had just stepped off of the neutral ground when he was struck. There was no competent evidence that Mr. Kenny was driving erratically or speeding. And, the evidence established that the victim and his companions were attempting to cross the street in the middle of the block, not at a crosswalk or at an intersection.[6]
Testimony from Officer Wahl established that it was very dark on the night of the accident, that he did not know whether Mr. Kenny’s car had its headlights on, and that he did not check to see if they were working. Although Officer Wahl testified that he turned Mr. Kenny over to a First District Unit for field sobriety testing, no one testified as to the results of this testing.
ImMr. Kenny presented the testimony of an accident reconstruction expert, Mr. Sunseri. Based on his analysis, Mr. Sun-seri opined that pedestrian error caused the accident. He conducted a reconstruction of the accident using two people, a state trooper and a female, and placed them on the neutral ground at the scene. In this reconstruction, Mr. Sunseri determined that it was “almost impossible to see a pedestrian until you were right up on them.” He further testified that a vehicle travelling at 35 mph would travel about 51.3 feet per second. The lag time between when a driver recognizes a pedestrian and moves his foot from the gas pedal to the brake is approximately three seconds. Thus, at 35mph, the vehicle would travel almost 154 feet before the driver could “begin to do anything.” He opined that there was not enough information to determine Mr. Kenny’s speed but there was sufficient information to conclude that he was travelling less than 50 mph. Based on his reconstruction analysis, Mr. Sunseri opined that “anybody, drinking or not, would have hit that person stepping out in front of them ... whether or not they [sic] had alcohol.”
Mr. Kenny contends that the State’s evidence does not establish, beyond a reasonable doubt, a causal relationship between his purported intoxication and the accident. We agree.
Where the State relies on circumstantial evidence as the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438; Huckabay, 809 So.2d at 1111. On the record before us, viewing the evidence in the light most favorable to the State, there is no question that Inthe victim stepped into the lane of travel on a dark night, in the middle of the block, in front of oncoming traffic. The only question is whether Mr. Kenny’s apparent intoxication prevented him from avoiding striking the victim. We find that the State failed to prove, beyond a reasonable doubt, that Mr. Kenny’s intoxication was the cause of the victim’s death. Louisiana Revised Statute 14:32.1, the statute under which Mr. Kenny was convicted, “is not aimed at persons involved in vehicular fatalities whose alcohol consumption does not cause but merely coincides with such an accident.” Taylor, 463 So.2d at 1275.
DECREE
For the foregoing reasons, we reverse Mr. Kenny’s conviction and vacate his sentence and pretermit the consideration of *999 Mr. Kenny’s remaining assignments of error. We adjudicate him not guilty and order him discharged from custody on this charge. See, Hearold, 603 So.2d at 734.
REVERSED

. All testimony at trial referred to the intersection of Tulane Avenue and North Gayoso Street. Tulane Avenue actually intersects with South Gayoso Street.

. The evidence established that the posted speed limit was 35 miles per hour.

. At the time of the offense, La. Admin. Code tit. 55, pt. I, § 555(G)(3) provided: "The blood sample taken for analysis may be maintained at room temperature and delivered to the designated collection site of each enforcement agency within 24 hours of the end of the collecting officer’s shift. It shall be transported then to the laboratory utilized for analysis at the earliest opportunity after collection, not to exceed seven days.” The statute was subsequently amended to change the time period from seven to ten days.

. The record is devoid of any evidence which addresses whether the delay in testing compromised the results.

. Referring to Mr. Kenny’s vehicle, Mr. Jones testified, it came "Q]ust from out of nowhere—I don’t know where the truck came from.”

. Testimony also established that the victim was 18 years old and had a blood alcohol level of 0.024 gram percent.