STATE OF LOUISIANA IN      *      NO. 2024-CA-0699
THE INTEREST OF A.M.

     *

             COURT OF APPEAL

     *

             FOURTH CIRCUIT

     *

             STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2024-119-03-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

JENKINS, J., CONCURS IN RESULTS ONLY

Chad Ikerd
LOUISIANA APPELLATE PROJECT
600 Jefferson St., Ste. 903
Lafayette, LA 70502-2125

       COUNSEL FOR DEFENDANT/APPELLANT

Jason R. Williams, DISTRICT ATTORNEY
Brad Scott, CHIEF OF APPEALS
Zachary M. Phillips, ASSISTANT DISTRICT ATTORNEY
619 South White Street
New Orleans, LA 70119

       COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

       **ADJUDICATION REVERSED; DISPOSITION VACATED;
       AND REMANDED FOR A NEW ADJUDICATION HEARING**.
       **March 17, 2025**

This is a juvenile delinquency case. The juvenile court adjudicated the

juvenile—A.M.[1]—delinquent, finding he committed the offense of simple

burglary, a violation of La. R.S. 14:62. From that delinquency adjudication, A.M.

appeals. We reverse the delinquency adjudication, vacate the delinquency

disposition, and remand for a new adjudication hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter stems from a car burglary. In April 2024, A.M. was arrested and

charged with one count of simple burglary; the charge against him read as follows:

> [A.M.] did, without authorization, enter a 2022 Gray Hyundai Elantra
> belonging to JOHNNIE LEE LIPSCOMB ["Mr. Lipscomb"], with the
> intent to commit a felony or any theft therein, on or about January 2,
> 2024 at or near the 3100 block of Banks St. in the Parish of Orleans.

In May 2024, A.M. pled not guilty. In June 2024, the State filed a pre-trial notice

of intent to use an expert witness—Kevin Bell, a latent print examiner. In July

2024, A.M.'s adjudication hearing was continued due to Mr. Bell's unavailability.[2]

---

[1] The juvenile, who was 17 at the time of the hearing, is referred to in this opinion by his initials. *See* Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal; La. Ch.C. art. 412.

[2] The district court, over defense counsel's objection, granted the State's request for a continuance based on Mr. Bell's illness. The State represented Mr. Bell was crucial to this case.

1

At the August 2024 adjudication hearing, the State called four witnesses: (i) the victim, Mr. Lipscomb; (ii) the responding officer, Detective Darrell Richardson ("Detective Richardson"); (iii) the "after-investigation" officer, Detective Kerry Brown ("Detective Brown"); and (iv) the arresting officer, Detective Landon Tillery ("Detective Tillery"). The State failed to call Mr. Bell.

According to Mr. Lipscomb, on the night of the burglary, he was in his bedroom, located in the back of his house, when he heard the sound of breaking glass. He went to his living room, located in the front of his house, and looked out the window. He saw a person standing outside of his car, which was parked in the front of his house, and a flashing light inside his car. He then saw a trio of individuals walking away from his car. When he went outside to investigate, the trio was gone, the rear passenger window of his car was broken, and the inside of his car was ransacked. Immediately thereafter, at about 11:45 p.m, Mr. Lipscomb called the police.

About fifteen minutes later, Detective Richardson arrived. Detective Richardson observed the rear passenger window of Mr. Lipscomb's Hyundai Elantra was smashed out and that glass was on the ground. After talking to Mr. Lipscomb, Detective Richardson examined the car for fingerprints. He observed a "single handprint fingerprint" on the front passenger window. Detective Richardson dusted the car for prints, lifted the print he spotted, and submitted the print to Central Evidence and Property for analysis. According to Detective Richardson, the fingerprint he lifted from the outside of the front passenger

2

window was "actually noticeable." Detective Richardson acknowledged that he never went inside the vehicle.[3]

A few weeks after the initial investigation, Detective Brown—the "after-investigation" officer—received Mr. Bell's handprint expert's report containing the results of the testing (the "Bell Report"). The results placed A.M. at the scene of the crime. Detective Brown acknowledged that they did not receive a report indicating the "date from when that [finger]print was placed." Over defense counsel's hearsay objection, the trial court allowed the State to introduce into evidence the Bell Report.

Detective Tillery—the arresting officer—identified A.M. in court as the person whom he arrested based on the arrest warrant for the January 2024 burglary. As noted elsewhere in this opinion, the State failed to call its expert, Mr. Bell, as a witness.

At the end of the adjudication hearing, the district court adjudicated A.M. delinquent on one count of simple burglary. This appeal followed.[4]

---

[3] At the time of his investigation, Detective Richardson was wearing a bodycam. At the hearing, the State, over A.M.'s counsel's objection, introduced the bodycam video. Short clips of the bodycam video were played at the hearing. The video documents Detective Richardson's testimony that the fingerprint was noticeable on the front passenger window of the car.

[4] The district court ordered a predisposition determination through the Office of Juvenile Justice ("OJJ"); placed A.M. in the Evening Report Center ("ERC") program; ordered continued compliance with electronic monitoring, which A.M. had been placed on by another court; and set September 25, 2024 as the date for A.M.'s disposition hearing. But, at the hearing, a disposition was not imposed; rather, the OJJ conducted a case review. A.M. was found to be compliant with the ERC requirements. Meanwhile, in September 2024, the juvenile court granted A.M.'s motion for appeal; the record was lodged with this Court; and the matter docketed.

In December 2024, this Court issued a show cause order to supplement the record with a final disposition. A disposition hearing was held in December 2024. At the hearing, the juvenile court sentenced A.M.—who was then eighteen years old—to one year with the OJJ, suspended, and one-year active probation, along with certain special conditions in the event A.M. is released on parole. Thereafter, the appellate record was supplemented with the final disposition. This

**Assignments of Error**

Although A.M. assigns multiple errors, two are dispositive: (i) the sufficiency of the evidence to sustain the delinquency adjudication for simple burglary; and (ii) trial error in allowing the State to introduce hearsay evidence—the Bell Report.[5]

**Sufficiency of the Evidence**

In conducting a sufficiency of the evidence review, an appellate court must apply the following analysis:

- [T]he entirety of the evidence, both admissible and inadmissible, is to be considered when assessing a conviction for sufficiency of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992); *State v. Brown*, 2008-1434, p. 8 (La. App. 4 Cir. 3/18/09), 7 So.3d 1238, 1242.

- If a defendant claims on appeal that certain evidence was improperly admitted, and the reviewing court finds that any rational trier of fact, viewing all the evidence in a light most favorable to the prosecution, could have found all the essential elements of the offense present beyond a reasonable doubt, the reviewing court then reviews other assignments of trial errors to determine whether the defendant is entitled to a new trial. *Hearold*, 603 So.2d at 734; *Brown*, 7 So.3d at 1242.

---

Court resubmitted this matter for decision in February 2025.

[5] A.M. assigned as error the following:

1. The record does not contain sufficient evidence to sustain the adjudication of delinquency for the offense of simple burglary.

2. Over the strenuous objection of counsel, the trial judge considered as substantive evidence, hearsay evidence offered to show the conduct of the investigation. The overruling of counsel's objections was clear error prejudicial to A.M. The error should result in a reversal of the adjudication and a vacation of the disposition. The use of the report authored by Kevin Bell and introduced through the testimony of Detective Brown, as opposed to Mr. Bell's testimony, deprived A.M. of his constitutional right to confront his accusers. The error was more egregious as the State had previously notified the defense of its intent to call Mr. Bell as an expert witness. The palm print on the outside of Mr. Lipscomb's car was the sole evidence of guilt.

3. It was patent error for the trial judge not to impose a judgment of disposition within the time limitations set by La. Ch.C. art. 892. A.M. was prejudiced by the ruling as the trial judge did not award credit for time served in continued custody following his arrest. Nor did the trial judge advise A.M. of the delays to file for post conviction relief.

4

- If the reviewing court determines there has been a trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, the defendant must receive a new trial. He is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient.

- On the other hand, if the review of the entirety of the evidence, admissible and inadmissible, reveals that the evidence is insufficient, the defendant is entitled to an acquittal. *Hearold*, 603 So.2d at 734; *Brown*, 7 So.3d at 1242-43.

*State v. Kenny*, 11-1819, pp. 6-7 (La. App. 4 Cir. 5/29/13), 116 So.3d 992, 996 (reformatted).[6] When the issues on appeal include both the sufficiency of the evidence and trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence—admissible and inadmissible. *Hearold*, 603 So.2d at 734. Such is the case here.

The State's burden of proof in a juvenile delinquency proceeding is the same as in an adult criminal proceeding—to prove beyond a reasonable doubt every element of the offense alleged in the petition. *State in Int. of D.W.*, 22-01654, p. 2 (La. 10/20/23), 371 So.3d 1065, 1067 (citing La. Ch.C. art. 883 and *State in the Interest of Batiste*, 367 So.2d 784, 788 (La. 1979)). Here, the alleged delinquent act is simple burglary—the "unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, . . . with the intent to commit a felony or any theft therein[.]" La. R.S. 14:62(A)(1).

---

[6] "Appellate courts have observed that a child adjudicated a delinquent in Louisiana is entitled to a broader scope and standard of review than the minimum required by the Due Process clause, and therefore review of a delinquency adjudication is subject not only to the "rational fact-finder" standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but also the 'clearly wrong/manifest error' standard applied in civil proceedings." *State in Int. of D.W.*, 22-01654, p. 2 n.3, 371 So.3d at 1067 (internal citation omitted).

The essential elements of simple burglary are two-fold: (1) an unauthorized entry of a vehicle;[7] and (2) a specific intent to commit a felony or any theft in the vehicle.[8] *See State v. Simpson*, 447 So.2d 98, 99 (La. App. 4th Cir. 1984). Stated otherwise, "burglary consists of an act element and an intent element. La. R.S. 14:7, 14:8. The act element, or *actus reus,* is the unauthorized entry of a dwelling or vehicle. The intent element, or *mens rea,* is the specific intent to commit a theft (or other felony) in the dwelling or vehicle." *State v. Arceneaux*, 12-1047, p. 2 (La. App. 3 Cir. 4/3/13), 111 So.3d 1177, 1180. As with other offenses, the State is also required to prove the perpetrator's identity. *State in Int. of K.D.*, 13-1274, p. 6 (La. App. 4 Cir. 4/9/14), 140 So.3d 182, 186 (internal citations omitted).

Also relevant here is the rule regarding principal liability, codified in La. R.S. 14:24. "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." *State in Int. of D.W.*, 22-01654, pp. 4-5, 371 So.3d at 1069. Neither direct commission of the crime nor presence at the crime scene is needed to support a conviction as a principal. *Id.* (citing *Whitmore v. Maggio*, 742 F.2d 230, 232 (5th Cir. 1984)). To find a defendant guilty as a principal to simple burglary, the State need not prove that the defendant actually

---

[7] "The 'entry' element of the crime of simple burglary is proved when there is evidence that any part of the defendant's person intrudes, even momentarily, into the structure." *State ex rel. J.N.*, 07-1229, 07-1306, p. 8 (La. App. 4 Cir. 5/7/08), 984 So.2d 910, 915.

[8] Specific intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Thus, specific intent need not be proven as fact; it can be inferred from the defendant's acts and circumstances. *State v. Buhcannon*, 11-1727, p. 11 (La. App. 4 Cir. 3/13/13), 112 So.3d 312, 319 (quoting *State v. Pittman*, 11-0741, pp. 3-4 (La. App. 4 Cir. 2/29/12), 85 So.3d 782, 785).

entered the structure, rather, it need only prove that the defendant was concerned with the commission of the crime. *See State v. McCord*, 11-0656, p. 9 (La. App. 4 Cir. 2/15/12), 85 So.3d 210, 215.

Here, A.M.'s adjudication rests upon the fingerprint evidence[9] coupled with the testimony of Mr. Lipscomb and the officers involved in the investigation and arrest. Focusing on the fingerprint evidence, A.M. contends that his fingerprint that was found on the outside of the front passenger window of the car was insufficient to establish specific intent. A.M. further contends that his fingerprint only establishes that he touched the car at some undetermined time. He emphasizes Detective Brown's testimony that there is no report as to when the fingerprint was placed on the car. As a result, A.M. contends that it could not be established beyond a reasonable doubt that he was one of the trio that Mr. Lipscomb saw walking from his car. Regardless, A.M. contends that the record is devoid of any evidence that he entered the car. Lastly, A.M. cites the rule regarding liability as a principal and emphasizes that the rule has an important qualification—an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. According to A.M., nothing in the record establishes beyond a reasonable doubt that he had the requisite specific intent to commit a burglary.

The State counters that the fingerprint evidence is sufficient to establish both elements of simple burglary—unauthorized entry and specific intent. According to the State, the fingerprint evidence placed A.M. at the scene of the crime on the night of the incident. The State points out that Mr. Lipscomb testified that A.M.

---

[9] For ease of discussion, we refer to A.M.'s palm print as the fingerprint evidence.

was not authorized to come into contact with Mr. Lipscomb's car or to enter his car. The requirement of unauthorized entry, the State contends, is met given A.M.'s fingerprint on the car; at a minimum, the presence of his fingerprint makes A.M. a principal, either directly or indirectly concerned with the commission of the crime. Continuing, the State contends that the circumstantial evidence excludes every reasonable hypothesis of innocence that A.M. did not enter the car. Finally, the State contends that A.M. and his co-conspirators had the specific intent to commit a simple burglary.[10]

The linchpin of A.M.'s sufficiency argument is that the State's fingerprint evidence is insufficient to establish the essential elements of simple burglary. Simply stated, the dispositive issue is whether the fingerprint evidence, standing alone, is sufficient to establish the elements necessary to adjudicate A.M. delinquent. We conclude it is sufficient.

This Court has observed that "[w]hen, as in the case at bar, the sole evidence of a defendant's unauthorized entry at the time of the burglary is fingerprints, a jury can reasonably find the defendant guilty beyond a reasonable doubt if the State also presents evidence which reasonably excludes the hypothesis that the prints were impressed at a time other than that of the crime." *State v. Cornelius*,

---

[10] The requirement of specific intent, the State contends, is sufficiently established by the circumstances. The circumstances indicate that A.M. and his co-conspirators had the requisite specific intent to commit a burglary upon this specific vehicle as well as a theft or other felony therein. The inside of Mr. Lipscomb's vehicle was ransacked, according to Mr. Lipscomb's testimony. This indicates that the offenders were looking for something—certainly something of value—that they could take from the vehicle. The fact that the rear passenger window, as opposed to any other window, was broken is significant. In many vehicles, the rear windows are less likely to trigger the vehicle's alarm. Similarly, the fact that the burglarized car is a Hyundai is also significant; Hyundais are common burglary and theft targets because of their particular susceptibility to hotwiring with ordinary objects like USB cords and screwdrivers. *See State v. Pierre*, 24-0470, p. 9 (La. App. 4 Cir. 12/6/24), ___ So.3d ___, 2024 WL 5036191 at *4 (describing the attempted theft of a Hyundai sedan with the use of a USB cord).

539 So.2d 919, 921 (La. App. 4th Cir.1989) (citing *State v. Pryor*, 306 So.2d 675 (La. 1975); *State v. Davenport*, 445 So.2d 1190 (La. 1984); and La. R.S. 15:438).

Fingerprint evidence, in this context, is circumstantial evidence. *See* La. R.S. 15:438. In Louisiana, the circumstantial evidence rule is codified as follows: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The circumstantial evidence rule does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; rather it serves as a helpful evidentiary guide. *State v. Toups*, 01-1875, p. 3 (La. 10/15/02), 833 So.2d 910, 912.

"[W]here the circumstances surrounding a defendant's fingerprints create a strong inference that the defendant was the perpetrator," fingerprint evidence may suffice to support a conviction. *Monroe v. State*, 652 A.2d 560, 564 (Del. 1995). The surrounding circumstances that may be considered include, but are not limited to, the following three factors:

- [W]hether the prints were found in a private or public structure (*i.e.*, whether the object in question was generally-accessible);

- [W]hether the defendant had any special access to the object in question which may provide an alternative explanation for the presence of the prints; and

- [W]hether the manner of placement of the prints on the object is supportive of the defendant having placed them there while committing the charged offense.

*Id.* (reformatted). Application of those factors here establishes that the evidence is sufficient to support the delinquency adjudication.

First, at the adjudication hearing, defense counsel argued that A.M.'s fingerprint was found on a "public facing object on [the] public facing part of a

9

motor vehicle" and that "putting your hand on a window is not a crime." Rejecting

that argument, the district court, in its oral reasons for judgment, observed:

> [T]here is no proof that [A.M.] actually went into the vehicle, however when a bit of glass is broken, and you have to hit that bit of glass in order break the glass than obviously there is some entering of the vehicle. The [victim] also testifies that his items are rummaged around. That when he went to bed that night that his car was not in that state. In addition to that I think there was some argument about it's a public vehicle it's a public facing object it's a public area and that anybody could touch a vehicle but again at the time of this alleged incident your handprint is found [sic] at the time of this alleged incident the victim states that he did not allow anybody the opportunity to enter his vehicle clearly if items are ransacked somebody entered his vehicle at the time of the incident the victim further alleges that he actually sees persons at the vehicle at the time three persons I think running from the vehicle and he also testifies that he calls the police at about 11:43 and the police officer testifies that I believe he got to the scene at 11:58. Your handprint is the only one that's found the vehicle has obviously been ransacked and rummaged through that means that somebody went in it your fingerprints the one that's there based on what's been provided.

The fact that a fingerprint is found in a public place does not trump other

considerations; it is only a factor to consider. *See Kenney v. State*, 908 N.E.2d 350,

353 (Ind. Ct. App. 2009). Here, the district court's reasons reflect that it considered

this factor, which defense counsel argued, and rejected the suggestion that it

dictated an inference that the fingerprints were not left at the time of the offense.

Second, A.M. had no special access to Mr. Lipscomb's car. To the contrary,

Detective Brown testified that after receiving the match on A.M.'s fingerprints, he

met with Mr. Lipscomb and asked him if the person in the photograph should have

had any contact with his vehicle; Mr. Lipscomb responded no. Mr. Lipscomb

likewise testified that he never gave anyone permission to bust out his car window

or to go in his car.

Third, the manner of placement of the prints—on the outside, front

passenger window—is supportive of A.M. having placed them while committing

10

the offense. The entry into the vehicle was made by smashing the rear passenger window. The proximity of the print to the point of entry—the same side of the car—supports the inference that A.M.'s fingerprint was placed there during the commission of the offense. Moreover, Detective Richardson described the appearance of the fingerprint as "actually noticeable." Given the fingerprint was on the outside of the car window, the appearance of the fingerprint supports an inference that it was freshly made.

Taken all the surrounding circumstances into account, we conclude that the fingerprint evidence coupled with the testimony given at the hearing was sufficient to support the delinquency adjudication for simple burglary.

**Trial Error—Allowing Introduction of Hearsay Evidence—the Bell Report**

A.M. next contends that the district court erred in allowing the State, over defense counsel's objection, to introduce hearsay evidence—Mr. Bell's expert report. The use of the Bell Report, introduced through the testimony of Detective Brown, as opposed to Mr. Bell's testimony, deprived A.M. of his constitutional right to confront his accusers. The error was more egregious as the State had previously notified the defense of its intent to call Mr. Bell as an expert witness.

The State counters that, although Detective Brown could indeed identify and authenticate the Bell Report, the report itself presents a Confrontation Clause issue under *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).[11] The State concedes that A.M. was denied his right to

---

[11] Under *Crawford*, the Bell Report is a testimonial statement covered by the Confrontation Clause, and the analyst himself—Mr. Bell—was a witness for purposes of the Sixth Amendment. Absent a showing that the analyst was unavailable to testify at trial and that A.M. had a prior opportunity to cross-examine him, A.M. was entitled to confront him at the adjudication hearing. The State acknowledges that it is unclear why Mr. Bell did not appear to testify at the adjudication hearing, despite the State noticing its intent to call him as an expert witness as to latent fingerprint examinations.

confront the expert witness with regard to the Bell Report, which connected A.M. to the crime. The State likewise concedes that given the Bell Report was used as substantive evidence to show A.M.'s guilt for the charged offense, it cannot be said that its introduction into evidence was harmless error. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329, 129 S.Ct. 2527, 2542, 174 L.Ed.2d 314 (2009) (observing that the Sixth Amendment to the United States Constitution does not permit the State to prove its case by using *ex parte* out-of-court affidavits).

Accordingly, we find, as the State concedes, that a trial error was committed that was not harmless—the admission of the Bell Report despite the expert's absence from trial. But, the Bell Report could be considered for the *Jackson* sufficiency of evidence analysis. *Hearold*, 603 So.2d at 734. Based on the *Jackson* analysis conducted elsewhere in this opinion, this Court concludes that the evidence—admissible and inadmissible—is constitutionally sufficient to adjudicate A.M. as delinquent for simple burglary. Because the adjudication is constitutionally sufficient, this Court does not acquit A.M. of the offense charged; rather, we order a new trial—a new adjudication hearing.

**Error Patent Review**

Although this Court conducts an error patent review in juvenile cases, we pretermit addressing the errors patent in this matter. Doing so is unnecessary given our reversal of the delinquency adjudication, vacation of the delinquency disposition, and remand for a new trial.

**<u>DECREE</u>**

For the foregoing reasons, we reverse the delinquency adjudication, vacate

the delinquency disposition, and remand for a new adjudication hearing.

**ADJUDICATION REVERSED; DISPOSITION VACATED; AND
REMANDED FOR A NEW ADJUDICATION HEARING**